PEOPLE v GLASS

Docket No. 206426. Submitted June 9, 1998, at Lansing. Decided May 11, 1999, at 9:00 A.M. Leave to appeal sought.

Willie Glass, Jr., was indicted by a multicounty grand jury of conspiracy to deliver 650 grams or more of cocaine. The grand jury was convened after prosecutors from Ingham, Eaton, and Clinton Counties petitioned the Court of Appeals to convene the grand jury to investigate alleged drug trafficking and other related violent crimes. The Court issued an order establishing a grand jury consisting of six jurors selected from Ingham County, six jurors selected from Eaton County, and five jurors selected from Clinton County. *In re Petition for Multicounty Citizens' Grand Jury*, unpublished order of the Court of Appeals, entered January 13, 1995 (Docket No. 181751). The order also granted the petitioners' motion to suppress the grand jury proceedings and the contents of the petition. The order was suppressed, but was thereafter ordered released. The defendant waived his right to a preliminary examination and was bound over to the Eaton Circuit Court. The defendant requested that the prosecution produce the petition, but the request was denied on the basis that the prosecution did not have the legal authority to release the documents. The defendant moved for dismissal of the indictment and requested a copy of the petition, alleging violations of the constitutional rights of due process, equal protection, and to have a jury selected from a fair cross section of the community. The court, G. Michael Hocking, J., denied the motion but ordered that an evidentiary hearing be held to consider the allegations of constitutional violations. Following the hearing, at which several potential witnesses were advised not to testify because of the suppression order, the court, Calvin E. Osterhaven, J., denied the motion to dismiss, finding that the defendant did not support the contention that African-Americans were systematically excluded from the grand jury. In the meantime, the defendant filed a motion in the Court of Appeals seeking to unseal the grand jury documents. The motion was returned to the defendant on the bases that no appellate proceedings existed and that the grand jury matter was closed. The defendant's application for leave to appeal the trial court's denial of the motion for dismissal was denied. *People v Glass*, unpublished order of the Court of Appeals, entered July 21,

1997 (Docket No. 203592). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 456 Mich 870 (1997).

The Court of Appeals *held*:

1. Challenges to the grand jury selection process may be based on the fair-cross-section requirement of the Sixth Amendment, the Equal Protection Clause of the Fourteenth Amendment, or an applicable statutory provision.

2. Although the dictates of MCL 767.13; MSA 28.953 and MCL 767.14; MSA 28.954 protect the grand jury from technical challenges or defects, they do not preclude constitutional challenges or defects.

3. The defendant's waiver of the preliminary examination did not render harmless any error involving racial discrimination in the grand jury selection or composition.

4. The court did not err in ruling that MCL 767.13; MSA 28.953 and MCL 767.14; MSA 28.954 do not preclude the defendant's challenge to the grand jury selection process based on the Sixth and Fourteenth Amendments.

5. The defendant has not yet established a prima facie case of racial discrimination under the Sixth or Fourteenth Amendments. The matter must be remanded for further evidentiary hearings in this regard. The grand jury record may be unsealed pursuant to the dictates of MCR 6.107(B) so that the defendant may obtain evidence to support his claim. The information to be released is that relating solely to the claims of racial discrimination in the selection or composition of the grand jury. The defendant's constitutional rights override the need for secrecy with regard to the grand jury proceedings.

6. The suppression order in Docket No. 181751 must be vacated to the extent necessary to comply with the opinion in this matter.

Affirmed in part and remanded.

O'CONNELL, J., dissenting, stated that any errors that may have occurred in the grand jury proceedings were harmless. The prosecutor filed a felony information charging the defendant after the grand jury indicted the defendant, a magistrate issued a warrant for the defendant's arrest, and the defendant waived his preliminary examination. Whether allegations are set forth in a document entitled "complaint" or one entitled "indictment," once the defendant is bound over for trial, the information governs the charges and the document stating the original allegations becomes irrelevant. Where, as here, the defendant waives the preliminary examination, the information may charge the defendant with any offense alleged in the document initiating proceedings in the district court. No dep-

rivation of rights resulted from the fact that the allegations against the defendant were initially set forth in an indictment instead of a complaint. The valid information independently sustained the filing of charges against the defendant in the circuit court. The court court's decision should be affirmed.

1. GRAND JURY — CONSTITUTIONAL LAW — SELECTION OF GRAND JURY — CHALLENGES.

   Challenges to a grand jury selection process may be based on the fair-cross-section requirement of the Sixth Amendment, the Equal Protection Clause of the Fourteenth Amendment, or an applicable statutory provision; MCL 767.13; MSA 28.953 and MCL 767.14; MSA 28.954 protect the selection of a grand jury from technical challenges or defects but do not preclude constitutional challenges or defects (US Const, Ams VI, XIV).

2. GRAND JURY — PRELIMINARY EXAMINATIONS — WAIVER — RACIAL DISCRIMINATION.

   A defendant's waiver of a preliminary examination does not render harmless any error involving racial discrimination in the selection or composition of the grand jury that indicted the defendant.

3. GRAND JURY — CONSTITUTIONAL LAW — TESTIMONY — EXHIBITS.

   Testimony or exhibits involved in grand jury proceedings generally may not be made known or published; however, a defendant who is indicted by a grand jury and alleges racial discrimination in the selection and composition of the grand jury in violation of the Sixth and Fourteenth Amendments of the United States Constitution may be entitled to access to sealed or suppressed testimony or exhibits that are relevant to the defendant's claim (US Const, Ams VI, XIV; MCR 6.107; MCL 767.19f; MSA 28.959[6]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Jeffrey L. Sauter,* Prosecuting Attorney, and *Hope E. Freeman,* Assistant Prosecuting Attorney, for the people.

Constitutional Litigation Associates, P.C. (by *Hugh M. Davis, Jr.,* and *Patrick M. Edwards*), for the defendant.

Before: JANSEN, P.J., and MARKEY and O'CONNELL, JJ.

Jansen, P.J. This case is on remand from the Supreme Court for consideration as on leave granted. 456 Mich 870 (1997). Defendant appeals from the trial court's order denying his motion to dismiss a charge of conspiracy to deliver 650 grams or more of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) and MCL 750.157a; MSA 28.354(1), claiming racial discrimination in the selection and composition of the multicounty grand jury that indicted him. We affirm in part and remand for further proceedings.

I

In December 1994, prosecutors from Ingham, Eaton, and Clinton Counties petitioned this Court to convene a multicounty grand jury to investigate alleged drug trafficking and other related violent crimes. On January 13, 1995, this Court entered an unpublished order, *In re Petition for Multicounty Citizens' Grand Jury* (Docket No. 181751), establishing a grand jury consisting of seventeen jurors selected as follows: six jurors from Ingham County, six jurors from Eaton County, and five jurors from Clinton County. This Court's order also granted the prosecutors' motion to suppress the grand jury proceedings and the contents of the petition under MCL 767.19f; MSA 28.959(6) and MCR 7.216(A)(7).[1]

On April 27, 1995, the multicounty grand jury indicted defendant on a charge of conspiracy to

---

[1] This order was also suppressed, but was ordered released pursuant to this Court's own motion on December 27, 1995.

deliver 650 grams or more of cocaine.[2] On September 8, 1995, defendant waived his right to a preliminary examination. On October 9, 1995, defendant requested, as part of his discovery, that the prosecution produce the grand jury petition; however, the prosecution answered on December 27, 1995, that it could not produce the documents relating to the establishment of the multicounty grand jury because it did not have the legal authority to release those documents.

On February 21, 1996, defendant moved to dismiss the indictment, alleging, among other things, that the multicounty grand jury violated his due process rights, his Sixth Amendment right to a jury selected from a fair cross section of the community, US Const, Am VI, and his Fourteenth Amendment right to equal protection, US Const, Am XIV. Specifically, defendant indicated that the population of Clinton County is 3.85 percent African-American and 13.8 percent of the total population of the three counties, the population of Eaton County is 3.56 percent African-American and 21.47 percent of the total population of the three counties, and the population of Ingham County is 9.87 percent African-American and 65.16 percent of the total population of the three counties.[3] Defendant thus contended that this Court's order that five grand jurors be from Clinton County, six from Eaton County, and six from Ingham County amounted to a systematic overrepresentation of the counties with

---

[2] Defendant is being tried in Eaton County, although he actually resides in Ingham County. The information alleges that defendant conspired with two others to deliver 650 grams or more of cocaine. The grand jury indictment alleges that the conspiracy occurred in Eaton County from June 1991 until November 1993.

[3] These population figures are based on the 1990 census.

the smallest African-American population and a systematic underrepresentation of the county with the largest African-American population. Defendant further contended that if proper percentages had been used, Clinton County would have had two grand jurors, Eaton County would have had four grand jurors, and Ingham County would have had eleven grand jurors.[4] In addition to arguing for dismissal, defendant requested that the trial court order the prosecution to produce a copy of the petition for the establishment of the multicounty grand jury.

The trial court denied defendant's request for a copy of the petition, indicating that defendant's remedy was to seek redress in the Court of Appeals for a copy of the grand jury petition. The other bases of defendant's motion for dismissal, not at issue in this appeal, were denied by the trial court. The trial court, however, held an evidentiary hearing regarding defendant's allegations of constitutional violations. The evidentiary hearing was held on March 12, 1997, and April 2, 1997. Several potential witnesses were advised not to testify because of this Court's order suppressing the grand jury proceedings and contents of the petition. Those witnesses who did testify shed little light on how the grand jury was selected and whether African-Americans were excluded from the grand jury.[5] The Eaton County deputy clerk and Ingham County deputy clerk indicated that their juror questionnaire did not contain questions pertaining to

---

[4] Defendant also attached to his motion two affidavits from witnesses at the grand jury proceedings who stated that there were no African-Americans on the seventeen-person grand jury.

[5] We note that the Legislature requires that the names of grand jurors shall be drawn in the same manner and from the same source as petit jurors. MCL 600.1326; MSA 27A.1326.

race. Both the Eaton County and Ingham County deputy clerks indicated that they did not know how the multicounty grand jury was selected. A member of the Clinton County jury board indicated that two panels of potential petit jurors from Clinton County were assigned to the multicounty grand jury pool. These panels were formed by use of the Secretary of State's list of licensed drivers in Clinton County, mailing questionnaires to the licensed drivers, and the jury board's review of the returned questionnaires to determine who could sit on the jury panels. Persons excluded were those who did not have appropriate citizenship, had a documented physical disability, were over the age of seventy, lacked competency, were currently under conviction of a felony, or served on a jury within the past twelve months. The Clinton County juror questionnaire also did not include questions about race.

In the meantime, on March 10, 1997, defendant filed a motion in the Court of Appeals to unseal the grand jury documents. However, defendant's motion was returned with a letter from the clerk of the Court of Appeals indicating that no appellate proceedings existed and that the grand jury matter was closed. Because defendant was unable to establish the contention that African-Americans were systematically excluded from the grand jury without any supporting documentation, the trial court denied defendant's motion to dismiss on the basis of racial discrimination in the selection of the grand jury in an order dated April 11, 1997.

Defendant then filed an interlocutory application for leave to appeal the trial court's denial of his motion for dismissal in this Court on May 2, 1997,

which was denied. *People v Glass*, unpublished order of the Court of Appeals, entered July 21, 1997 (Docket No. 203592). However, defendant filed an interlocutory application for leave to appeal to our Supreme Court, which, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted.

On appeal, defendant raises four issues. He argues that he may challenge the multicounty grand jury on constitutional grounds regardless of the dictates of MCL 767.13; MSA 28.953 and MCL 767.14; MSA 28.954. Defendant also argues that he established a prima facie case of racial discrimination under the Sixth and Fourteenth Amendments. Finally, defendant argues that the grand jury records must be unsealed to protect his due process rights so that he may attempt to establish a prima facie case of racial discrimination in the event that no prima facie case of racial discrimination has been established. We agree with defendant that he may challenge the multicounty grand jury on constitutional grounds regardless of the statutes and that the grand jury records may be unsealed with regard to matters relevant to his claims under the Sixth and Fourteenth Amendments. We remand for an evidentiary hearing to decide whether defendant has established a prima facie case of racial discrimination under either the Sixth or Fourteenth Amendment in light of the unsealed grand jury records.

II

Defendant first argues that he may challenge the multicounty grand jury on constitutional grounds regardless of the dictates of MCL 767.13; MSA 28.953 and MCL 767.14; MSA 28.954. The trial court agreed

with defendant in this regard and ruled that defendant could challenge the grand jury on constitutional grounds regardless of the two statutory provisions.

MCL 767.13; MSA 28.953 provides:

> A person held to answer to any criminal charge may object to the competency of any one summoned to serve as a grand juror, on the ground that he is the prosecutor or complainant upon any charge against such person; and if such objection be established, the person so summoned shall be set aside.

MCL 767.14; MSA 28.954 provides:

> No challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other case than that specified in the preceding section.

We first address the equal protection challenge. Beginning with *Strauder v West Virginia*, 100 US 303; 25 L Ed 664 (1880), the United States Supreme Court reversed a state conviction on the ground that the indictment charging the offense had been issued by a grand jury from which African-Americans had been excluded. The Supreme Court has consistently rejected arguments that a conviction may stand in spite of racial discrimination in the selection of the grand jury. See *Vasquez v Hillery*, 474 US 254, 261; 106 S Ct 617; 88 L Ed 2d 598 (1986), and cases cited therein. Under the Fourteenth Amendment of the federal constitution, a criminal defendant's right to equal protection is denied when the defendant is indicted by a grand jury from which members of a racial group have been purposefully excluded. *Id.*, p 262. Thus, under a long line of United States Supreme Court precedence, it is beyond question that defend-

ant may challenge the selection of the grand jury under the Equal Protection Clause of the Fourteenth Amendment.

The more difficult question is whether defendant may also bring a Sixth Amendment fair-cross-section challenge with respect to a state grand jury. A criminal defendant is entitled to an impartial jury drawn from a fair cross section of the community, as guaranteed by the Sixth Amendment of the federal constitution. *Duren v Missouri*, 439 US 357; 99 S Ct 664; 58 L Ed 2d 579 (1979); *Taylor v Louisiana*, 419 US 522; 95 S Ct 692; 42 L Ed 2d 690 (1975); *People v Hubbard (After Remand)*, 217 Mich App 459, 472; 552 NW2d 493 (1996). This Sixth Amendment fair-cross-section requirement applies to state juries through the Fourteenth Amendment. *Duncan v Louisiana*, 391 US 145, 149; 88 S Ct 1444; 20 L Ed 2d 491 (1968). Further, "[l]ower courts generally have held that the cross-section requirement applies to grand jury selection as well as petit jury selection." 2 LaFave & Israel, Criminal Procedure (Criminal Practice Series), § 15.3(c), pp 293-294.  In this regard, the federal courts have generally held that the Sixth Amendment entitles defendants in federal criminal cases to a grand and petit jury selected at random from a fair cross section of the community. *United States v Esquivel*, 88 F3d 722, 724 (CA 9, 1996);  *United States v Terry*, 60 F3d 1541, 1544 (CA 11, 1995); *United States v Grisham*, 63 F3d 1074, 1078 (CA 11, 1995); *United States v Greene*, 995 F2d 793, 796 (CA 8, 1993) (noting that both the Fifth Amendment guarantee of due process and the Sixth Amendment  guarantee of an impartial jury require that grand jurors and the venire of petit jurors be chosen from a fair cross section of the community).

Further, the federal courts have also applied the Sixth Amendment fair-cross-section requirement to habeas corpus cases where a state grand jury was involved. *Cunningham v Zant*, 928 F2d 1006, 1013 (CA 11, 1991); *Cobbs v Robinson*, 528 F2d 1331, 1334 (CA 2, 1975) (applying the Due Process and Equal Protection Clauses of the Fourteenth Amendment).

Requiring state grand juries to conform to the Sixth Amendment fair-cross-section requirement finds further support in *Carter v Jury Comm of Greene Co*, 396 US 320, 330; 90 S Ct 518; 24 L Ed 2d 549 (1970), where the Supreme Court stated, "Once the State chooses to provide grand and petit juries, whether or not constitutionally required to do so, it must hew to federal constitutional criteria in ensuring that the selection of membership is free of racial bias." The Supreme Court further noted that its duty to protect the federal constitutional rights does not mean that the Court will impose its conception of the proper source of jury lists on states; however, the source of the lists must reasonably reflect a cross section of the population " 'suitable in character and intelligence for that civic duty.' " *Id.*, p 333 (citation omitted).

Therefore, despite the dictates of MCL 767.13; MSA 28.953 and MCL 767.14; MSA 28.954, a criminal defendant may certainly allege a constitutional violation with respect to the selection of a grand jury. These statutes cannot preclude a constitutional challenge to a grand jury selection process, and we do not read these provisions as attempting to do so. It is axiomatic that the Legislature cannot enact a statute that runs afoul of the constitution or attempts to narrow constitutional rights. Rather, the proper analysis is that challenges to the grand jury selection process

may be based on the fair-cross-section requirement of the Sixth Amendment, the Equal Protection Clause of the Fourteenth Amendment, *or* an applicable statutory provision. *Grisham, supra,* p 1077.

Contrary to the prosecution's contention, this Court's decision in *People v Edmond,* 86 Mich App 374; 273 NW2d 85 (1978), does not compel a different result. This Court in *Edmond* did *not* hold that MCL 767.13; MSA 28.953 and MCL 767.14; MSA 28.954 preclude a defendant's right to challenge the selection process of a grand jury under the Sixth or Fourteenth Amendments of the federal constitution. In fact, in considering the defendants' constitutional due process challenge, this Court addressed the merits of the claim and ultimately held that mere judicial participation in the selection and impaneling of a grand jury, absent bias or prejudice, does not violate constitutional due process. *Edmond, supra,* p 392.

Rather, the statutes protect the grand jury from "technical" challenges or defects. See *id.,* p 395. This is the teaching of *People v Lauder,* 82 Mich 109, 135; 46 NW 956 (1890), that the statutes protect the selection of the grand jury from technical defects, but do not preclude constitutional challenges or defects:

> This proceeding to find an indictment before a grand jury, or to bind an accused person over to the circuit court by a justice of the peace, is but the presentment of a case to be tried before a petit jury, and the proceeding is not to be governed by any mere technicalities, as long as the substantial rights of the accused to a speedy and fair trial before a jury of his peers is preserved and remains to him. In a case where a grand jury was impaneled without any jurisdiction whatever, or fraudulently, or in willful disregard of the law and the rights of the accused, or when substantial injustice was shown to have been done him by any of

the proceedings in organizing the grand jury, or by the pro-
ceedings before it after it was organized, it would be the
duty of the court, upon proper showing, to quash the
indictment.

We also reject the prosecution's argument that
defendant's right to a preliminary examination ren-
ders any error in the selection of the grand jury to be
harmless.[6] In this case, defendant is challenging the
selection of the grand jury on federal constitutional
grounds. In *Vasquez, supra*, pp 263-264, the United
States Supreme Court held that discrimination in the
grand jury undermines the structural integrity of the
criminal trial itself and is not amenable to review for
harmless error. The right to a preliminary examina-
tion in this state, which is not present in the federal
system, does not alter this analysis. The preliminary
examination does not protect a defendant where the
initial grand jury proceedings may have had a racial
animus. In this case, the grand jury's indictment was
used to issue the complaint, the felony warrant, and
the arraignment on the warrant. On September 8,
1995, defendant waived his right to a preliminary
examination and was bound over on the charge con-
tained in the indictment. The information was then
filed on September 27, 1995.

In *Vasquez, id.*, p 263, the Supreme Court noted
that "even if a grand jury's determination of probable
cause is confirmed in hindsight by a conviction on the

---

[6] In this regard, the prosecution's reliance on an unpublished decision
of this Court is misplaced inasmuch as unpublished decisions are not
precedentially binding under the rule of stare decisis. MCR 7.215(C)(1).
Moreover, that opinion is not applicable to the present case because no
racial discrimination challenge (constitutionally based) was made to the
grand jury proceedings.

indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come." Similarly, a preliminary examination, which is merely a probable cause hearing, cannot protect a criminal defendant because the discrimination that infected the indictment led to all subsequent proceedings. "An error that violates the federal constitution obliges us to look to federal precedent for the harmless error rule." *People v Anderson (After Remand)*, 446 Mich 392, 404; 521 NW2d 538 (1994). Because the United States Supreme Court has held that discrimination in the grand jury undermines the structural integrity of the criminal trial and is not amenable to review for harmless error, we are bound to follow that ruling and apply it to this case. Defendant's waiver of the preliminary examination did not render harmless any error involving racial discrimination in the grand jury selection or composition.

Accordingly, the trial court did not err in ruling that MCL 767.13; MSA 28.953 and MCL 767.14; MSA 28.954 do not preclude defendant's challenge to the grand jury selection based on the Sixth and Fourteenth Amendments of the federal constitution. Defendant may challenge the grand jury under the Equal Protection Clause of the Fourteenth Amendment and the fair-cross-section requirement of the Sixth Amendment.

III

Defendant next argues that he established a prima facie case of racial discrimination under the Sixth and Fourteenth Amendments. We do not believe that

defendant has established a prima facie case of racial discrimination under the Sixth or Fourteenth Amendment at this point; however, because we believe that defendant is entitled to unseal the grand jury documents (as will be explained more fully), we remand to the trial court to reconsider this contention.

In order to establish a prima facie violation of the fair-cross-section requirement of the Sixth Amendment, a defendant must show: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process. *Duren, supra,* p 364; *Hubbard, supra,* p 473. In order to establish a prima facie violation of equal protection occurring in the context of grand jury selection, the defendant must show: (1) that the defendant is a member of a distinct, recognizable group singled out for different treatment; (2) that members of this group were significantly underrepresented on grand jury venires as compared to the community as a whole over a significant period; and (3) that the procedure used to select the grand juries was susceptible to abuse or was not racially neutral. *Castaneda v Partida,* 430 US 482, 494; 97 S Ct 1272; 51 L Ed 2d 498 (1977); *Grisham, supra,* p 1081. The purpose of an equal protection claim is to determine whether the disparity in the jury venire is the result of a discriminatory purpose. *Id.* The inquiry in a fair-cross-section claim focuses on the representativeness of the jury venire, whereas the focus of an equal protection claim is whether mem-

bers of a distinct group have been intentionally denied the opportunity to serve on a jury. *Id.*

At this point, defendant has not proved a prima facie case of discrimination under either the Sixth Amendment or the Fourteenth Amendment because he has not provided evidence regarding the racial composition of the grand jury venire, he has not shown that the underrepresentation of African-Americans was due to a systematic exclusion of their members during the selection process, and he has not shown that the grand jury selection procedure was racially biased or susceptible to abuse.

IV

However, we agree with defendant's final argument that the grand jury record may be unsealed so that he may obtain evidence to support his claim of racial discrimination in the event that he has not established a prima facie case of violation of the fair-cross-section requirement or equal protection.

This issue presents a two-part problem because this Court's order convening the multicounty grand jury included an order granting the prosecution's motion for suppression. Thus, defendant seeks to unseal this Court's file concerning the grand jury petition and vacate this Court's order suppressing the file to the extent that witnesses from the counties involved were advised not to testify because of the suppression order. Clearly, defendant cannot prove his claim of racial discrimination in the selection or composition of the grand jury without evidence of how the grand jury venire was selected. We believe that defendant's constitutional rights in this regard override the need for secrecy of the grand jury proceedings. However,

we limit the information to be released to that relat-
ing solely to defendant's claims of racial discrimina-
tion in the selection or composition of the grand jury.

MCR 6.107(A) provides:

> · Whenever an indictment is returned by a grand jury or a
> grand juror, the person accused in the indictment is entitled
> to the part of the record, including a transcript of the part
> of the testimony of all witnesses appearing before the grand
> jury or grand juror, that touches on the guilt or innocence
> of the accused of the charge contained in the indictment.

This court rule stems from our Supreme Court's deci-
sion in *People v Bellanca*, 386 Mich 708, 715-716; 194
NW2d 863 (1972), where the Court held:

> We hold today that a person accused of a crime by any
> grand jury has the right to a transcript of his testimony and
> such parts of the record, including the testimony of other
> witnesses before the grand jury touching on the issue of his
> guilt or innocence of the crime charged. To obtain it he
> must petition the circuit court of the county wherein the
> grand jury was impaneled therefor.
>
> In order to implement the procedure for obtaining cus-
> tody of the material requested, we are today publishing a
> court rule. The rule provides that upon receipt of such peti-
> tion the circuit judge shall direct the person having custody
> of the records to deliver same to him.
>
> The circuit judge shall thereupon examine the record and
> supply that material requested to the petitioner and cause
> the rest of the record to be returned to the custody of the
> person from whom the judge obtained it.

This Court's order granting the motion for suppres-
sion, as contained in the order convening the mul-
ticounty grand jury, relied on MCL 767.19f; MSA
28.959(6). This statute provides that "[e]xcept as oth-
erwise provided by law, it is unlawful for any person

to publish or make known to any other person any testimony or exhibits obtained or used, or any proceeding conducted, in connection with any grand jury inquiry." However, in order to establish evidence, if any, of his claim of racial discrimination under the Sixth  or Fourteenth Amendments, there must be some access to the record or other evidence regarding the selection and composition of the grand jury. There are clearly exceptions to this otherwise broad statutory provision that testimony or exhibits in connection with a grand jury proceeding may not be made known. See MCR 6.107(A); *People v Wimberly,* 384 Mich 62, 69; 179 NW2d 623 (1970)  (It is within the trial court's discretion, in the interests of a fair trial, to release any and all of the grand jury testimony relevant to the guilt or innocence of the defendant when the testimony is requested by the defendant before trial. In exercising such discretion, the trial court might require that a particularized need be shown by the defendant that none of the traditional reasons for secrecy of the grand jury proceedings controls in the case.); *Bellanca, supra,* p 714 (a person accused of a crime by any grand jury has the right to a transcript of the testimony of all witnesses who testified at the grand jury relevant to the defendant's guilt or innocence so that defense counsel can be properly prepared for cross-examination of the witnesses); *People v Fagan (On Remand),* 213 Mich App 67, 69-70; 540 NW2d 296 (1995)  (a defendant charged by information and not by indictment is still entitled to grand jury testimony touching on the defendant's guilt or innocence so that the defendant's constitutional rights to effective assistance of counsel and cross-examination are not violated).

In *People v Stanaway*, 446 Mich 643, 668-669; 521 NW2d 557 (1994), our Supreme Court stated that statutory and common-law privileges may have to be yielded if those privileges interfere with certain constitutional rights of criminal defendants. Because defendant is claiming a constitutional violation in the composition and selection of the grand jury, we believe that the grand jury documents, suppressed under MCL 767.19f; MSA 28.959(6), must be unsealed pursuant to the dictates of MCR 6.107(B). That is, defendant must request the grand jury record (here, Docket No. 181751) from the chief judge of this Court, who will conduct an in camera inspection and certify the parts of the record bearing on the issue of defendant's claim of racial discrimination in the selection and composition of the grand jury under the Sixth and Fourteenth Amendments as being all the evidence bearing on that issue. See MCR 6.107(B).

We emphasize the limited nature of the unsealing of the grand jury records in this case, but believe that such limiting is necessary because of the constitutional basis of defendant's claim. Moreover, to the extent that a balancing test is required to determine whether to unseal the grand jury records, defendant's constitutional claim and right to a fair trial outweigh any needs for secrecy. See *Wimberly, supra,* p 67. Here, defendant is not seeking the identity of grand jury witnesses, confidential informants, or undercover police officers. Rather, defendant seeks the racial composition of the multicounty grand jury venire and the grand jury, and the selection procedures used that produced the grand jury that indicted him. There being no compelling reason to suppress the information that defendant seeks, he is entitled to the

unsealing of the grand jury record to the extent stated in this opinion.

We further vacate this Court's suppression order in Docket No. 181751[7] to the extent that defendant's claim under the Sixth and Fourteenth Amendments of racial discrimination in the composition and selection of the grand jury can be explored and testified about by county officials or employees (such as those who would not previously testify). Accordingly, this case is remanded to the trial court for further proceedings relative to defendant's claim under the Sixth and Fourteenth Amendments of racial discrimination in the selection and composition of the grand jury consistent with the procedures set forth in this opinion.

Affirmed in part and remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

MARKEY, J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent. Defendant was charged by information with conspiracy to deliver 650 grams or more of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) and MCL 750.157a; MSA 28.354(1). Defendant filed a motion in the circuit court to dismiss the information, claiming racial discrimination in the selection and composition of the multicounty grand jury that indicted him. The trial court denied the motion to dismiss. I would affirm the decision of the trial court.

---

[7] The motion for suppression was granted "until further order of this Court." We, therefore, conclude that we have the authority to vacate the suppression order to the extent stated in this opinion.

This case arises from an alleged delivery of cocaine in Eaton County. On January 13, 1995, this Court granted a petition to convene a multicounty grand jury pursuant to MCL 767.7b; MSA 28.947(2). *In re Petition for Multicounty Citizens' Grand Jury*, unpublished order of the Court of Appeals (Docket No. 181751). Subsequently grand jurors from Clinton, Eaton, and Ingham Counties indicted defendant on a charge of conspiracy to deliver 650 grams or more of cocaine. On the strength of the indictment, an Eaton County magistrate issued a warrant for defendant's arrest. Thereafter, defendant waived his preliminary examination and an Eaton County prosecutor filed a felony information charging defendant with conspiracy to deliver 650 grams or more of cocaine.

On appeal defendant contends that the trial court erred in refusing to quash the felony information, arguing that he established a prima facie case of racial discrimination under the Sixth and Fourteenth Amendments, US Const, Ams VI, XIV, and that therefore this Court must dismiss the charges.[1] Without considering the merits of defendant's claims,[2] I con-

---

[1] I agree with the majority that defendant has failed to establish a prima facie case of discrimination under either the Sixth or Fourteenth Amendments.

[2] If I were to consider the substance of defendant's claims, I would find them to be without merit. Defendant cannot maintain his equal protection claim because he has not alleged purposeful discrimination in this Court's order of January 13, 1995, that instituted the multicounty grand jury or in the execution of that order. *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 309; 553 NW2d 377 (1996). Defendant's claim under the Sixth Amendment of disparate impact must also fail because, at best, defendant established only an isolated instance where African-Americans were substantially underrepresented on a grand jury. *People v Hubbard (After Remand)*, 217 Mich App 459, 481; 552 NW2d 493 (1996). Defendant has produced no evidence establishing that the selection process has systematically resulted in statistically significant underrepresentations in other similar multicounty grand juries.

clude that any alleged errors in the grand jury proceedings were harmless.

In Michigan, criminal charges may be filed by either information or indictment. MCR 6.112(B). Either mechanism provides the circuit court with jurisdiction over felony charges. *Id.* See also MCL 767.1; MSA 28.941. The only substantive difference between these two procedures is that an information is predicated on a signed complaint whereas an indictment results from grand jury deliberation. Whether allegations are set forth in a document entitled "complaint" or one entitled "indictment," the process that follows is identical. In either case, the allegations are tested by a preliminary examination before charges may be filed in the circuit court. Once the defendant is bound over for trial, the information governs the charges and the document stating the original allegations becomes irrelevant. *People v Lauer*, 41 Mich App 4, 7; 199 NW2d 534 (1972). See also *People v Hunt*, 442 Mich 359, 363; 501 NW2d 151 (1993). The information is presumptively drafted with reference to the facts disclosed at the preliminary examination. *Id.*, citing *People v Kahler*, 93 Mich 625, 627; 53 NW 826 (1892).

Where, as here, the defendant waives the preliminary examination, the information may charge the defendant with any offense alleged in the document initiating proceedings in the district court. See *People v McDonald*, 233 Mich 98, 101; 206 NW 516 (1925). Accordingly, that the allegations against defendant were initially set forth by an indictment instead of a complaint resulted in no deprivation of defendant's rights.

In the present case, the prosecution proceeded under both charging mechanisms. However, in lieu of

using the indictment, the prosecutor charged defendant by way of a sufficiently detailed felony information. See MCL 767.45; MSA 28.985. Thus, under Michigan's system of charging by information or indictment, the valid information independently sustained the filing of charges against defendant in the Eaton Circuit Court. Because the information in the present case is valid, the alleged errors in the grand jury process did not undermine the circuit court's jurisdiction. Accordingly, if the alleged errors occurred, they were nonetheless harmless. For these reasons, I would affirm the trial court's decision to deny defendant's motion to dismiss.