**Michigan Supreme Court**
Lansing, Michigan 48909

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 12, 2001

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,
    Cross-Appellee,

v                                      No. 114795

WILLIE GLASS, JR.,

    Defendant-Appellee,
    Cross-Appellant.

_____

BEFORE THE ENTIRE COURT

(AFTER REMAND)

WEAVER, J.

Following his waiver of preliminary examination, the defendant was bound over to Eaton Circuit Court on the charge of conspiracy to deliver 650 or more grams of cocaine. Defendant, who is black, seeks to challenge the composition of the multicounty grand jury that indicted him, claiming that the selection process systematically excluded blacks from the multicounty grand jury. The prosecution responds that the information it filed after defendant waived preliminary examination purged any taint in the grand jury selection process.

On remand from this Court, the Court of Appeals rejected

the prosecution's argument and directed further proceedings on the selection issue, including the unsealing and inspection of certain grand jury documents that might be relevant to the claim of racial discrimination in selection of the composition of the grand jury.

We hold that this Court exceeded its criminal procedure rulemaking authority in *People v Duncan*, 388 Mich 489; 201 NW2d 629 (1972), by creating a substantive right to a preliminary examination for grand jury indictees. To the extent that *Duncan* exceeded this Court's rulemaking authority, it is overruled and its implementing court rules are rejected.

As to defendant's constitutional claims, we hold that he has not established and cannot establish a prima facie case of discrimination under either the Sixth or the Fourteenth Amendment. It was, therefore, an abuse of discretion for the Court of Appeals to order an in-camera inspection of the grand jury record.

The judgment of the Court of Appeals is reversed in part, and this case remanded to the circuit court for further proceedings consistent with this opinion.

I

Upon a petition filed by Clinton, Eaton, and Ingham County prosecutors, the Court of Appeals on January 13, 1995, formed a multicounty grand jury under MCL 767.7b *et seq*. The grand jury was given jurisdiction over the three counties. The Court of Appeals order provided that the grand jury would consist of seventeen jurors: six from Ingham County, six from

Eaton, and five from Clinton County. The court's order granted the prosecutors' motion to suppress the grand jury proceedings.

On April 27, 1995, the grand jury indicted the defendant on a charge of conspiracy to deliver 650 grams or more of cocaine.[1] The indictment alleged that the conspiracy took place in Eaton County. A felony warrant was issued by the circuit judge on assignment by the Court of Appeals to the multicounty grand jury. Defendant was apparently arraigned on the indictment on May 12, 1995, and bond was set for $150,000.[2]

On September 8, 1995, the defendant appeared in the 56th District Court and waived preliminary examination on the indictment. Defendant was bound over to the Eaton Circuit Court, and his papers were filed with that court on September 11, 1995. Defendant waived arraignment in the Circuit Court on September 27, 1995 or September 28, 1995.[3]

On September 29, 1995, the Eaton County prosecutor filed an information in circuit court. The information was identical to the indictment, again alleging conspiracy to deliver 650 grams or more of cocaine. Attached to the information was a list of witnesses. There is no record of

_____

[1] MCL 333.7401(2)(a)(i), 750.157a.

[2] Court of Appeals Order Setting Bond and Remanding Case to the 56-2 District Court for Further Proceedings.

[3] Two copies of what appear to be one waiver arraignment appear in the record with these dates stamped by the Eaton County Clerk.

3

a complaint and warrant or a separate preliminary examination or waiver in the district court before the filing of the information.

Trial was scheduled and adjourned several times. On February 21, 1996, the defendant moved to dismiss, alleging, among other things, that the composition of the grand jury violated his due process rights, his Sixth Amendment right to a jury selected from a fair cross section of the community, and his Fourteenth Amendment right to equal protection. As the Court of Appeals summarized his allegations:

> Specifically, defendant indicated that the population of Clinton County is 3.85 percent African-American and 13.8 percent of the total population of the three counties, the population of Eaton County is 3.56 percent African-American and 21.47 percent of the total population of the three counties, and the population of Ingham County is 9.87 percent African-American and 65.16 percent of the total population of the three counties.[3] Defendant thus contended that this Court's order that five grand jurors be from Clinton County, six from Eaton County, and six from Ingham County amounted to a systematic overrepresentation of the counties with the smallest African-American population and a systematic underrepresentation of the county with the largest African-American population. Defendant further contended that if proper percentages had been used, Clinton County would have had two grand jurors, Eaton County would have had four grand jurors, and Ingham County would have had eleven grand jurors.[4] In addition to arguing for dismissal, defendant requested that the trial court order the prosecution to produce a copy of the petition for the establishment of the multicounty grand jury.

> _____

> [3] These population figures are based on the 1990 census.

> [4] Defendant also attached to his motion two affidavits from witnesses at the grand jury proceedings who stated that there were no African-

4

Americans on the seventeen-person grand jury.

_____

[235 Mich App 455, 459-460; 597 NW2d 876 (1999).]

On March 12 and April 2, 1997, the circuit court held evidentiary hearings on defendant's motion to dismiss. The Court of Appeals summarized the testimony at the hearing as follows:

> Those witnesses who did testify shed little light on how the grand jury was selected and whether African-Americans were excluded from the grand jury.[5] The Eaton County deputy clerk and Ingham County deputy clerk indicated that their juror questionnaire did not contain questions pertaining to race. Both the Eaton County and Ingham County deputy clerks indicated that they did not know how the multicounty grand jury was selected. A member of the Clinton County jury board indicated that two panels of potential petit jurors from Clinton County were assigned to the multicounty grand jury pool. These panels were formed by use of the Secretary of State's list of licensed drivers in Clinton County, mailing questionnaires to the licensed drivers, and the jury board's review of the returned questionnaires to determine who could sit on the jury panels. Persons excluded were those who did not have appropriate citizenship, had a documented physical disability, were over the age of seventy, lacked competency, were currently under conviction of a felony; or served on a jury within the past twelve months. The Clinton County juror questionnaire also did not include questions about race.

_____

> [5] We note that the Legislature requires that the names of grand jurors shall be drawn in the same manner and from the same source as petit jurors. MCL 600.1326.

_____

[*Id.* at 460-461.]

The circuit court denied defendant's motion to dismiss on the basis of racial discrimination in selection of the grand jury, concluding that the defendant had failed to establish

that blacks were systematically excluded.

Defendant filed an application for leave to appeal from that decision, which the Court of Appeals denied.[4] The defendant filed an application for leave to appeal to this Court, and on September 25, 1997, we issued an order remanding the case to the Court of Appeals for consideration as on leave granted.

On remand, the Court of Appeals concluded that defendant had not established a prima facie case of racial discrimination under either the Sixth or Fourteenth Amendment because he had not provided evidence regarding the racial composition of the grand jury venire, had not shown that underrepresentation of blacks was due to systematic exclusion during the selection process, and had not shown that the grand jury selection procedure was racially biased or susceptible to abuse. Nevertheless, the Court of Appeals agreed with defendant that the grand jury records should be unsealed so that he might obtain evidence to support that claim.[5] The

---

[4] Unpublished order, entered July 21, 1997 (Docket No. 203592).

[5] The Court said that the defendant should request the grand jury record from the chief judge of the Court of Appeals, who was to conduct an in-camera inspection and, "certify the parts of the record bearing on the issue of defendant's claim of racial discrimination in the selection and composition of the grand jury . . . ." 235 Mich App 473. The Court directed a further evidentiary hearing in the circuit court on defendant's claims. The Court also lifted part of the suppression order initially entered regarding the grand jury records so as to permit additional testimony by county officials or employees (some of whom had previously refused to testify).

6

Court of Appeals dissent concluded that any errors in the grand jury selection or proceedings were harmless because the prosecutor proceeded by information in the circuit court.

## II

Michigan law provides that criminal prosecutions may be initiated in the court having jurisdiction to hear the cause by either indictment or information. MCL 767.1 *et seq.* Throughout the record in this case, there is confusion regarding whether the defendant is in circuit court on the indictment or the information.[6] The record does reveal that the prosecution filed an information in the circuit court after the grand jury indictment had already been returned and the defendant bound over. The effect of the prosecutor's decision to file an information after the defendant's bindover on the grand jury indictment has raised questions involving the interplay of the statutes, case law, and court rules governing informations and indictments. In our order granting leave, we requested that the parties brief three issues in addition to granting leave on the issues raised by the

---

[6] At oral argument before this Court, the prosecution indicated that no complaint and warrant had been filed and yet seemed to argue that the information was validly filed in circuit court, thus mooting any taint in the grand jury proceeding. During a July 17, 1997, hearing on the prosecution's motion to endorse certain witnesses, the prosecutor stated that she was "not moving to amend the indictment." At that same hearing however, defense counsel included in a brief outline of this case's procedural history an "arraignment on the information."

parties.[7]   A  brief  overview  of  Michigan's  two  criminal charging  procedures  provides  context  for  the  discussion  and conclusions that follow.

A

Criminal  prosecutions  may  be  initiated  in  the  court having  jurisdiction  over  the  charge  upon  the  filing  of  an information.  MCL 767.1 *et seq.; People v Simon,* 324 Mich 450, 456; 36 NW2d 734 (1949).  An information is predicated upon a signed  complaint  and  warrant.   A  complaint  must  state  the substance  of  the  accusation  and  reasonable  cause  to  believe that the person accused committed the offense.  MCL 764.1d.

The  accused  has  a  right  to  a  preliminary  examination before  the  prosecutor  files  an  information  in  the  court  having jurisdiction to hear the cause.  MCL 767.42.  The accused and the  state  are  entitled  to  a  "prompt"  examination.   MCL 766.1;. The  primary  function  of  a  preliminary  examination  is  to determine if a crime has been committed and, if so, if there is  probable  cause  to  believe  that  the  defendant  committed  it. *People v Bellanca*, 386 Mich 712; 194 NW2d 863 (1972).   As to the  timing  of  the  preliminary  examination,  MCR  6.112(B)

---

[7] We asked:  (1) whether the prosecutor's filing of an information  under  MCR  6.112  after  the  defendant  waived  the preliminary  examination  removed  the  taint  of  the  alleged racial  discrimination  in  the  selection  of  the  grand  jury  that indicted defendant, (2) whether MCR 6.112 conflicts with MCL 767.29,  as  construed  in  *People v Curtis,*  389  Mich  698;  209 NW2d 243 (1973), and (3) whether this Court properly exercised its  authority  over  criminal  procedure  in  *People v Duncan, supra,*  to grant defendants indicted by grand juries the right to a preliminary examination.

provides in pertinent part that

> [u]nless the defendant is a fugitive from justice, the prosecutor may not file an information until the defendant has had or waives preliminary examination.

Once an information has been filed, the prosecutor may not enter a nolle prosequi "or in any other way discontinue or abandon the same, without stating on the record the reasons therefore and without leave of the court having jurisdiction to try the offense charged, entered into its minutes." *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 120; 215 NW2d 145 (1974).[8]

Criminal prosecutions may also be initiated by grand jury indictment. MCL 767.1 *et seq.*; MCR 6.112(B). Grand juries may be convened over two or more counties upon petition filed with the Court of Appeals by the Attorney General or by prosecuting attorneys from each county named in the petition and upon an order of the Court of Appeals. MCL 767.b. The Court of Appeals may convene the requested grand jury if the petition establishes probable cause to believe that a crime, or portion thereof, has been committed in two or more of the named counties and if the petition establishes that a grand jury could "more effectively address" that alleged criminal

---

[8] *Genesee* noted that MCL 767.29, which discusses obligations of a prosecuting attorney upon any indictment, also applies to prosecutions by information pursuant to MCL 750.10, which provides "the word 'indictment' includes information." Further, *Genesee* noted that MCL 767.2 provides that all provisions of law applicable to prosecutions by indictment shall in general apply to prosecutions by information.

activity.  MCL 767.7d.

There is no state constitutional right to indictment by grand jury; rather, indictment by grand jury is an alternative charging procedure created by the Legislature.  *In re Palm*, 255 Mich 632; 238 NW 732 (1931).  Grand juror names are "drawn in the same manner and from the same source as petit jurors." MCL 600.1326.  Indictment by grand jury establishes probable cause that a crime has been committed.  *Vasquez v Hillery*, 474 US 254; 106 S Ct 617; 88 L Ed 2d 598 (1986).  If an indictment is found, the foreperson presents the indictment to the court. MCL 767.25(1).  The presiding judge then returns the indictment to the court having jurisdiction over the offense, where it is filed.  MCL 767.25(3), (4).  A prosecutor is prohibited from entering a nolle prosequi upon an indictment or discontinuing or abandoning an indictment without stating reasons on the record and without leave of the court having jurisdiction over the charge. MCL 767.29.  The court to which the indictment is presented may issue a warrant for the arrest of the person indicted.  MCL 767.30.

*Duncan, supra* at 502, granted indictees the right to a preliminary examination.  In accordance with *Duncan,* MCR 6.110 provides a preliminary examination for a defendant indicted by a grand jury.  Consistent with MCL 767.2; MCR 6.112(A) provides, except as otherwise provided by the court rules or elsewhere, "the law and rules that apply to informations and prosecutions on informations apply to indictments and prosecutions on indictments."  MCR 6.112(B) also provides that

10

when an indictment is returned and filed before a defendant's preliminary examination, "the indictment may substitute for the complaint and commence judicial proceedings."[9] The provision of subsection (B) reflects the requirement of *Duncan, supra*, that grand jury indictees be afforded a preliminary examination.

B

The confused procedural posture of this case raises fundamental questions regarding Michigan's current dual charging procedures. As noted above, the indictment had been returned to circuit court and the defendant had waived preliminary examination in district court before the prosecutor filed the information in Eaton Circuit Court. There was no complaint and warrant filed to support the information. Nor did the prosecutor seek to abandon or

---

[9] This procedure, established by court rule and case law, is unique to Michigan. While our research reveals that twenty-eight states generally allow prosecutions by information or indictment and four other states require indictment by grand jury only in cases involving the most serious felonies, only Michigan and Oklahoma, Okla Stat, tit 22, § 524; see also *Stone v Hope,* 488 P2d 616 (Okla Crim App, 1971), grant a defendant a right to a preliminary examination following indictment. Lafave, Israel & King, Criminal Procedure (2d ed), § 15.1(e), (g), pp 239-240, 250-252. Although Oklahoma allows for a second determination of probable cause, the indictment remains the charging document. In Oklahoma, the grand jury returns the indictment to the trial court. A copy of the indictment is filed with the magistrate for preliminary examination purposes. Any resulting bindover is on the indictment. The prosecutor may not replace the indictment with an information. *Cunningham v Tulsa Co Dist Court,* 399 P2d 57 (Okla Crim App, 1965). Michigan thus stands alone in treating the indictment as a mere pleading that initiates criminal proceedings.

11

discontinue the indictment.[10]  Consistent with MCR 6.112(B),

the prosecutor treated the grand jury indictment as nothing

more than a complaint initiating criminal proceedings, despite

MCR 6.112 (A) and MCL 767.2, which treat indictments as

equivalent to informations.  As a result of this confusion, we

asked the parties to brief

> whether this Court properly exercised its authority
> over criminal procedure in *People v Duncan*, 388
> Mich 489 (1972), to grant defendants indicted by
> grand juries the right to a preliminary
> examination. [461 Mich 1005.]

As noted above, *Duncan* provided grand jury indictees with

the right to a preliminary examination after indictment.  The

Court then adopted implementing court rules, MCR 6.110 and MCR

6.112.  Pursuant to Const 1963, art 6, § 5, this Court has

exclusive authority to determine the rules of practice and

procedure.  *McDougall v Schanz*, 461 Mich 15, 26; 597 NW2d 148

(1999).  However, this Court's constitutional rulemaking

authority extends only to matters of practice and procedure:

> [T]his Court is not authorized to enact court
> rules that establish, abrogate, or modify the
> substantive law. [*Id*. at 27.][11]

---

[10]    MCL 767.29 states that the prosecutor shall not discontinue or abandon the indictment "without stating on the record the reasons for the discontinuance or abandonment and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes."  We asked the parties to brief "whether MCR 6.112 conflicts with MCL 767.29, as construed in *People v Curtis*, 389 Mich 698 [209 NW2d 243] (1973)."  Because the indictment was not abandoned in this case, it is not necessary or appropriate to explore the interplay of *Curtis* and MCR 6.112.

[11]  Contrary to the dissent's assertion, *McDougall* in no way limits this Court's constitutional authority to prescribe procedural rules that vindicate constitutional rights; rather,

12

We now address whether *Duncan* and the implementing court rules were a proper exercise of the Court's rulemaking authority.

Despite acknowledging that indicted defendants historically did not receive a preliminary examination, and that no statute so provided, *Duncan* declared such a right on the basis of policy. Regarding the significance of preliminary examination *Duncan* opined that "[t]here may well be serious questions of equal protection and due process involved in the present Michigan procedure . . . since it denies to an accused indicted by a multiple-man grand jury what has become recognized as a fundamental right in most criminal cases—the right to a preliminary examination." *Id.* at 502. *Duncan* expressly declined to rely on due process principles in creating the right to a preliminary examination for indictees. Rather than addressing those constitutional questions, this Court seized upon its "inherent power" to deal with the situation as a matter of criminal procedure and granted all defendants accused of a felony the right to a preliminary examination, even in those cases following indictment by a grand jury. *Id.*[12] Rather than following the statutory scheme pertaining to prosecutions by indictment, *Duncan* instead rewrote it. We are persuaded that *Duncan* and the implementing court rules exceed this Court's rulemaking

*McDougall* only precludes the promulgation of procedural rules contrary to legislative enactments that involve nonconstitutional substantive policies.

[12] Therefore, the dissent's suggestion that *Duncan* relied on due process principles is incorrect.

13

authority.  As this Court previously recognized:

> The measure of control exercised in connection with the prevention and detection of crime and prosecution and punishment of criminals is set forth in the statutes of the State pertaining thereto, particularly the penal code and the code of criminal procedure.  The powers of the courts with reference to such matters are derived from statutes. [*People v Piasecki*, 333 Mich 122, 143; 52 NW 626 (1952).][13]

The establishment of the right to a preliminary examination is more than a matter of procedure and beyond the powers vested in the Court by Const 1963, art 6, § 5; it is a matter of public policy for the legislative branch. *Shannon v Ottawa Circuit Judge*, 245 Mich 220, 222; 222 NW 168 (1928); *People v Piasecki*, supra; *Glancy v Roseville*, 457 Mich 580, 590; 577 NW2d 897 (1998).  *Duncan* and MCR 6.112(B) are also inconsistent with MCL 767.2, which provides for equivalency in the law between indictments and informations.

We reverse *Duncan*, insofar as it afforded indictees the right to a preliminary examination.  Additionally, we hold that the information filed in this case is null and void because it was filed pursuant to the invalid scheme set forth in MCR 6.112(B) that purported to allow an indictment to substitute for a complaint.  There was no complaint stating the substance of the accusation or reasonable cause to believe the accused committed the offense as required by MCL 764.1d, nor was there a preliminary examination on a complaint as

---

[13] Obviously, this Court's authority regarding the rules of practice and procedure derives from Const 1963, art 6, § 5, and is not subservient to the Code of Criminal Procedure. *McDougall, supra* pp 26-27.

14

required by MCL 767.42. Finally, the prosecution never sought to discontinue the indictment under MCL 767.29. Because the information is null and void, we do not address the effect a properly filed information might have on a previously returned indictment.[14] This case stands filed in the circuit court on the grand jury indictment. We next address the defendant's constitutional challenges to the grand jury proceedings.

III

The grand jury was composed of seventeen people, six from Ingham County, six from Clinton County, and five from Eaton County. Defendant alleges that this composition violated his right to equal protection under the Fourteenth Amendment and his Sixth Amendment right to a fair cross section on the grand jury venire.

A

Defendant alleges that the seventeen member tricounty grand jury makeup of 6-6-5 from Clinton, Ingham, and Eaton Counties respectively violated his right to equal protection under the Fourteenth Amendment. There is no right to have a particular grand jury reflect the precise racial composition

---

[14] Further, we asked the parties to brief:

> [W]hether the prosecutor's filing of an information under MCR 6.112 after defendant waived the preliminary examination removed the taint of the alleged racial discrimination in the selection of the grand jury that indicted defendant . . . . [461 Mich 1005.]

Because we hold the information is null and void, this harmless error issue is no longer relevant.

of a community.  *Akins v Texas*, 325 US 398; 65 S Ct 1276; 89 L Ed 1692 (1945).  Furthermore, discriminatory effect is insufficient to establish a violation of the Fourteenth Amendment; defendant must show discriminatory intent.  *People v Ford*, 417 Mich 66, 103; 331 NW2d 878 (1982); *Arlington Hgts v Metro Housing Dev Corp*, 429 US 252, 265; 97 S Ct 555; 50 L Ed 2d 450 (1977); *Washington v Davis,* 426 US 229, 242-243; 96 S Ct 2040; 48 L Ed 2d 597 (1976).  "Such an effect may permit an inference of an unlawful purpose, but, standing alone, it is not conclusive on the question whether governmental activity is racially discriminatory."  *Ford*, *supra* at 103.

In order to establish a prima facie case of racial discrimination in the selection of a grand jury under the Fourteenth Amendment, in addition to showing discriminatory purpose, defendant must show that the grand jury selection procedure resulted in a "substantial underrepresentation of his race."  *Castaneda v Partida*, 430 US 482, 494; 97 S Ct 1272; 51 L Ed 2d 498 (1977).  *Castaneda* articulated three steps to establish substantial underrepresentation.  The defendant must show 1) that he belongs to a recognizable, distinct class singled out for different treatment under the laws as written or as applied; 2) that there was significant underrepresentation of that distinct class over a significant period of time; and 3) that the selection procedure was susceptible of abuse or that it was not racially neutral. *Id.* at 494.  Once a defendant establishes a prima facie case, the burden shifts to the state to rebut the inference of

16

intentional discrimination.  *Id.* at 495.

We agree with the judgment of the Court of Appeals that defendant has not presented a prima facie case of discrimination under the Fourteenth Amendment.[15] We go further and hold that defendant will be unable to establish a prima facie case upon further review of the grand jury proceedings because he will be unable to establish a discriminatory purpose.  Defendant does not challenge the manner in which the jury impaneling was implemented.  Defendant's claim is premised solely upon the allegedly disparate effect of the 6-6-5 composition of grand jurors from the three counties chosen by the Court of Appeals.  Defendant does not present any evidence suggesting a discriminatory purpose, and nothing in the grand jury records could conceivably aid defendant in his effort to prove that the Court of Appeals acted with discriminatory purpose in establishing the 6-6-5 split.

The possibility of an adverse effect on the representation of blacks resulting from the 6-6-5 composition is relevant to discriminatory purpose, but is insufficient alone to establish that it was a purposeful device to exclude blacks from the grand jury.  *Washington, supra* at 239.  We therefore conclude that defendant will be unable to establish a prima facie case of a discriminatory purpose in violation of

_____

[15] We agree with the Court of Appeals that a defendant can challenge the grand jury selection process on Fourteenth Amendment equal protection grounds, notwithstanding MCL 767.13, 767.14, which the prosecutor argued precluded such challenges.

17

the Fourteenth Amendment.

B

Defendant also alleges that the 6-6-5 composition of the grand jury denied him his Sixth Amendment right to an impartial jury drawn from a fair cross section of the community. To establish a prima facie violation of the fair cross section requirement, "a defendant must show that a distinctive group was underrepresented in his venire or jury pool, and that the underrepresentation was the result of systematic exclusion of the group from the jury selection process." *People v Smith*, 463 Mich 199, 203; 615 NW2d 1 (2000), citing *Duren v Missouri*, 439 US 357; 99 S Ct 664; 58 L Ed 2d 579 (1979).[16]

A preliminary issue is whether the fair cross section requirement applies to state grand jury venires. The Court of Appeals assumed it did, but this is the first state decision to hold that a defendant may challenge the grand jury selection process on the basis of the fair cross section requirement. 235 Mich App 465-466. It is well-established that the Sixth Amendment fair cross section requirement applies to state petit jury venires. *Taylor v Louisiana*, 419

---

[16] In *People v Smith,* we held that no method for measuring whether representation was fair and reasonable should be used exclusively, but rather we adopted a case by case approach. We stated, "[p]rovided that the parties proffer sufficient evidence, courts should consider the results of all the tests in determining whether representation [on the venire] was fair and reasonable." *Id* at 204.

18

US 522; 95 S Ct 692; 42 L Ed 2d 690 (1975).[17]  However, the Fifth Amendment does not require grand juries in state prosecutions, *Hurtado v California*, 110 US 516; 4 S Ct 111; 28 L Ed 232 (1884), and the United States Supreme Court has not imposed the fair cross section requirement on states that allow indictment by grand jury.  See *Castaneda, supra* at 509-510 (Powell, J., dissenting).  The Sixth Circuit has held that due process for the purposes of state grand jury selection does not include the fair cross section requirement.  *Ford v Seabold*, 841 F2d 677, 687-688 (CA 6, 1988).

We need not decide whether Michigan should apply the fair cross section requirement to grand jury venires in this case because defendant has failed to allege a cognizable fair cross section claim.  Defendant contends that Ingham County residents were underrepresented on the basis of the 1990 census figures.  He argues that Ingham County should have had eleven positions on the grand jury rather than six.  Defendant argues that the underrepresentation of Ingham County residents had the effect of systematically underrepresenting blacks.  However, the fair cross section requirement does not guarantee that any particular jury chosen will literally mirror the community; rather, "jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups . . . and thereby fail to be

---

[17] The right to a fair cross section in federal grand jury venires is derivative of the Fifth Amendment and 28 USC 1861. *Id*. at 528-529.

reasonably representative thereof . . . ." *Smith, supra* at 214 (opinion of Cavanagh, J.). Because defendant's challenge is relevant to the make up of his particular grand jury, he cannot succeed on his claim.

C

Next we address whether the Court of Appeals erred when it ordered an in-camera inspection of the record bearing on the claim of racial discrimination in the selection and composition of the grand jury and lifted part of the suppression order initially entered regarding the grand jury records so as to permit additional testimony by county officials or employees. The Court of Appeals reasoned: "in order to establish evidence, if any, of his claim of racial discrimination under the Sixth or Fourteenth Amendments, there must be some access to the record or other evidence regarding the selection and composition of the grand jury." 235 Mich App 472. The Court of Appeals concluded that there was no compelling reason to suppress information relating to "the racial composition of the multicounty grand jury venire and the grand jury, and the selection procedures used that produced the grand jury that indicted him." *Id*. at 473. The Court of Appeals vacated its previous suppression order "to the extent that defendant's claim . . . can be explored and testified about by county officials or employees (such as those who would not previously testify)." *Id*. at 474.

Upon our review of defendants' constitutional claims, we are resolved that the Court of Appeals abused its discretion

20

by ordering the in-camera review and lifting the order of suppression. As in *People v Wimberly,* 384 Mich 62; 179 NW2d 623 (1970), we are faced with a conflict between the traditional reasons for secrecy of grand jury proceedings and the desirability of discovery. Because defendant cannot, upon further discovery, establish a prima facie case under either the Fourteenth or Sixth Amendment, we hold that the reasons for secrecy of grand jury proceedings outweigh the desirability of further discovery.

## IV

The judgment of the Court of Appeals is reversed, and this case is remanded to the circuit court for proceedings consistent with this opinion.

CORRIGAN, C.J., and YOUNG, and MARKMAN, JJ., concurred with WEAVER, J.

**S T A T E   O F   M I C H I G A N**

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,
    Cross-Appellee,

v                                                          No.  114795

WILLIE GLASS, JR.,

    Defendant-Appellee,
    Cross-Appellant.

_____

TAYLOR, J. (*concurring in part and dissenting in part*).

I agree with the majority's conclusion that the Court of Appeals erred in ordering further proceedings regarding the grand jury records.  I also agree with the majority that this Court exceeded its criminal procedure rulemaking authority in *People v Duncan*, 388 Mich 489; 201 NW2d 629 (1972), by creating a substantive right to a preliminary examination for grand jury indictees and that *Duncan's* implementing court rules should be rejected.  The fact that *Duncan* and MCR 6.112(B) are inconsistent with MCL 767.29 supports overruling *Duncan* and rejecting the implementing court rules.

However, unlike the majority, I would overrule *Duncan* and its implementing court rules prospectively.  In my judgment, the prosecution was entitled to rely upon MCR 6.112(B), and file the information. Defendant's subsequent waiver of a

preliminary examination on the information purged any taint in the grand jury proceedings. Because the alleged taint was purged,[1] I find it unnecessary to reach the constitutional issues decided in part III of the majority opinion. Because I would reject MCR 6.112(B) and overrule *Duncan* prospectively, I cannot agree with the majority that this case stands in circuit court on the grand jury indictment rather than the information. Having waived a preliminary examination defendant effectively conceded circuit court jurisdiction to hold him for trial by information.

---

[1] I believe this holding is consistent with *Vasquez v Hillery*, 474 US 254; 106 S Ct 617; 88 L Ed 2d 598 (1986), because the United States Supreme Court affirmed a lower court ruling that allowed defendant Hillery to stand trial, notwithstanding a discriminatorily empaneled grand jury, upon the filing of a "new charging document." See *Hillery v Pulley*, 563 F Supp 1228, 1252 (ED Cal, 1983). Thus, even if defendant Glass' grand jury was empaneled in a discriminatory fashion, Glass is in the same position as Hillery was, i.e., facing a charge under a new charging document.

**S T A T E   O F   M I C H I G A N**

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,
    Cross-Appellee,

v                                  No. 114795

WILLIE GLASS JR.,

    Defendants-Appellee,
    Cross-Appellant.

_____

CAVANAGH, J. (*dissenting*).

This case is yet another example of what has become a favored process of overruling established precedent. By overruling the part of *People v Duncan*, 388 Mich 489; 201 NW2d 629 (1972), that affords indictees the right to a preliminary examination, the majority has stripped criminal defendants of a necessary procedure in Michigan's criminal process. In addition to its disregard for Michigan precedent, the majority predicts that the defendant "will be unable" to prove his equal protection claim if given access to the grand jury records, when the majority has not read the content of those records. Because I would not overrule *Duncan* and would affirm the Court of Appeals decision to unseal the grand jury records

so that defendant might obtain evidence to support his constitutional claims, I respectfully dissent.

I

The majority states that in *Duncan*, this Court exceeded its rulemaking authority under Const 1963, art 6, § 5. The majority reasons that the right to a preliminary examination is substantive and policy based. Therefore, the majority believes that this case involves more than a matter of procedure, and should be decided on the basis of the will of the Legislature. Thus, the majority claims that *Duncan* can be lightly cast aside as an usurpation of legislative power. However, the text of Const 1963, art 6, § 5 clearly states the principle recognized by *Duncan*, that this Court has the exclusive power to establish rules of procedure.

Quoting the section from *Duncan* that discussed the possible equal protection violations in Michigan's criminal procedure without affording an indictee the right to a preliminary examination, the majority summarizes the "policy" concerns this Court expressed when it established the right. Slip op at 15. I disagree that due process considerations are "policy" concerns that we may not address when invoking our constitutional authority to establish procedure and that must be left to the Legislature. Due process considerations play a role in both procedural and substantive aspects of the law, thus making it difficult to avoid balancing substantive concerns when we implement procedures. The majority, however, expands its abdication of judicial authority in *McDougall v Schanz*, 461 Mich 15; 597 NW2d 148 (1999), by defining the due

2

process policy considerations we discussed in *Duncan* as substantive law and strictly within the province of the Legislature. This expansion of *McDougall* effectively eradicates our ability to weigh due process concerns when using our constitutional authority to establish procedure and shrinks the constitutional boundary that separates our rulemaking powers from those of the Legislature. Thus, I raise the concerns I articulated in my dissent from *McDougall*: what procedures, then, may this Court establish under Const 1963, art 6, § 5? Under the majority's view in this case, "the Legislature would appear free to control any aspect of the judicial function it wishes, save perhaps the scheduling of dockets." *McDougall* at 59, n 26. Moreover, the majority's view raises the issue whether we must revisit all previous established court rules to determine whether there were "improper" policy considerations made behind them.[1]

The valid concerns that we addressed in *Duncan* describe the substantive consequences that follow from the absence of a preliminary examination after a grand jury indictment. Thus, it seems the establishment of the right to a preliminary examination after a grand jury indictment effectuates substantive justice by dismissing equal protection concerns

---

[1] As I stated in my dissenting opinion in *McDougall* at 59:

> So we must wonder exactly how many of our court rules deal with items that might evoke considerations other than judicial dispatch, and thus be subject to alteration on the basis of those considerations, evidencing decisions of "substantive" law by the Legislature.

3

and assuring due process for criminal defendants. The majority fails to separate the preliminary examination's basic procedural nature in Michigan's criminal process from the procedure's substantive effects and concludes that the establishment of a preliminary examination is more than a matter of procedure. Slip op at 16. Contrary to the majority's conclusion, however, just because this Court used its constitutional power to establish a procedure in Michigan's criminal process that has the effect of assuring substantive justice does not magically change the nature of the procedure to that of a substantive right.

In *People v Bellanca*, 386 Mich 708; 194 NW2d 863 (1972), this Court addressed whether a criminal defendant faced with perjury charges before a one-man grand jury was entitled to the transcripts of witness testimony before that one-man grand jury. Although the Legislature had allowed access to such transcripts in a traditional grand jury situation, no such right was established in a one-man grand jury situation. This Court held that regardless of the Legislature's failure to add the right to grand jury transcripts in the statute governing one-man grand juries, both types of grand juries are of equal importance, and the reasoning behind allowing the right in the traditional grand jury setting applied in the one-man grand jury setting. This Court then proceeded to discuss what the majority in this case would likely label as mere "policy" concerns behind establishment of this right: because a criminal defendant is entitled to effective assistance of counsel at this stage, to be truly effective, "counsel must be

4

properly prepared for cross-examination of the prosecution's witnesses and thus he must have access to the testimony of such witnesses before the grand jury touching on matters in issue at the examination." *Bellanca* at 714. Accordingly, this Court held that "a defendant charged with perjury before a 'one-man grand jury' must have access to the transcripts of the testimony of all witnesses for or against him given before the 'one-man grand juror' in order to be accorded due process." *Id*. at 712. To implement this holding, this Court treated the establishment of the right to grand jury records as a procedure and created MCR 6.107.[2]

Thus, in *Bellanca*, substantive concerns of due process pushed this Court to use its constitutional authority to establish a procedure in Michigan's criminal process, the right to transcripts from the grand juror proceeding, which had the substantive effect of assuring due process. I do not doubt that, given the proper factual scenario, the majority would jump at an opportunity to strip yet another right afforded criminal defendants and overrule *Bellanca*, claiming we exceeded our rulemaking authority by creating a substantive right that is policy based. However, until that day, *Bellanca*

---

[2] MCR 6.107(A) states:

> Whenever an indictment is returned by a grand jury or a grand juror, the person accused in the indictment is entitled to the part of the record, including a transcript of the part of the testimony of all witnesses appearing before the grand jury or grand juror, that touches on the guilt or innocence of the accused of the charge contained in the indictment.

5

remains primary authority for the proposition that this Court may validly establish procedures, while considering the substantive effects of such procedures, under Const 1963, art 6, § 5. I, therefore, would hold that this Court was completely within its constitutional rulemaking authority in *Duncan* when it established that indictees are entitled to a preliminary examination.

## II

I also dissent from the majority's holding that it was an abuse of discretion for the Court of Appeals to order an in-camera inspection of the grand jury record. The purpose of the in-camera inspection was to allow defendant access to any possible evidence proving race discrimination. The majority denies defendant access to the grand jury record because it claims not only did defendant fail to prove a prima facie case of discrimination, but defendant *will be unable* to prove discrimination even with access to the record. In making this conclusion, the majority correctly states the requirements for proving a Fourteenth Amendment violation, which I agree defendant has not met. However, the majority takes its conclusion one step further and projects that defendant will be unable to prove a prima facie case because "upon further review of the grand jury proceedings . . . he will be unable to establish a discriminatory purpose." Slip op at 19. To support its prediction of defendant's future inability to prove discriminatory purpose, the majority states that defendant's claim is currently premised on the disparate impact of the 6-6-5 grand jury composition, which is

6

insufficient alone to prove discriminatory purpose.  Slip op at 19-20.

The majority's reliance on this reason to support its prediction is misplaced because it is based solely on what was lacking in defendant's first attempt to prove the prima facie case.  The evidence defendant has presented thus far and why it fails to prove a prima facie case of discrimination is irrelevant to what the grand jury records may provide in the future to prove the same claim.

Without the benefit of reading any additional information the grand jury record might provide, the majority hangs its hat on evidence that again has already been presented.  Unlike the majority, I refuse to speculate on what evidence the grand jury records may contain.  Perhaps the majority is correct and the record would reveal absolutely nothing to aid defendant in his constitutional claims. However, the majority could also be wrong, as the record would show how the grand jury venire was selected and thus could aid defendant in proving discriminatory intent behind the manner in which the grand jury was selected or composed.  Whatever the result *may be* if defendant could investigate the record, however, cannot be predicted when we have not reviewed the record ourselves.

Contrary to the majority's position, I recognize that our mission to rule justly, although time-consuming on certain occasions, should not be easily cast aside simply because the journey to such a result may come up fruitless.  We should not shut down the avenues available to a defendant seeking a just result, especially on the basis of an unfounded prediction

7

that defendant will not prevail.  I, therefore, would affirm the Court of Appeals conclusion that, although defendant did not prove a prima facie case, he is entitled to a remand to unseal the grand jury record to obtain any evidence it may contain to support his constitutional claims.

KELLY, J., concurred with CAVANAGH, J.